19786

Steve COGDILL, Respondent, v. EQUITY LIFE AND ANNUITY
COMPANY, Appellant

(203 S. E. (2d) 674)

*Messrs. Nash and Chappell,* of Sumter, *for Appellant,*

*Messrs. Jenkinson & Jenkinson,* of Kingstree, *for Respondent,*

March 6, 1974.

BUSSEY, Justice:

This is an action upon an accident insurance policy commenced on June 25, 1971 and tried before the Honorable Louis Rosen, presiding judge, and a jury on the 16th of April, 1973. The appellant-insurer appeals from a verdict against it in the amount of $4,070.00, such constituting the accrued benefits to the date of trial, if the insurer be liable therefor. The respondent-Cogdill sustained a serious injury to his back as the result of a fall on the 22nd day of October, 1969, and there seems to be no question that he remained totally disabled from that date until date of trial. Under the terms of the policy Cogdill, if totally disabled as the result of an accident, was entitled to benefits at the rate of $130.00 per month for 12 consecutive months and at the rate of $100.00 per month for another five years there-

after if he remained totally disabled within the terms of the policy.

The policy, however, contained the following exception or reduction clause:

"If the insured is entitled to benefits under this policy as a result of sprain, strains, lame back or any interverte-bral disc conditions, such benefits shall be payable for a maximum period of time not exceeding three months for any one injury."

It was the appellant-insurer's contention below that Cog-dill's disability resulted from the sprain, strain, lame back or an intervertebral disc condition and that by virtue of the above quoted clause its liability was limited to the three months' benefits which had already been paid. The first contention made on appeal is that the trial court should have directed a verdict for the appellant on the stated ground.

It is elementary that in considering whether the trial court should have granted a defense motion for a directed verdict the evidence and all inferences reasonably deduci-ble therefrom have to be viewed in the light most favorable to the plaintiff. We proceed to review and state the key evi-dence in the light of such principle. Following the accident Mr. Cogdill was first attended by Dr. Poston of Kings-tree, who after some time apparently referred him to Dr. James T. Green, an orthopedic surgeon in Columbia. Dr. Green, after attending Mr. Cogdill for a while, apparently referred him to a Dr. Smith, a neurosurgeon, who in June, 1970 performed intervertebral disc surgery upon Cogdill. Dr. Green last saw Cogdill on January 21, 1971. Cogdill was also attended by Dr. W. L. Harritt of Sumter who saw him on various occasions from November 23, 1970 until the time of the trial. Dr. Poston and Dr. Smith were not called as witnesses. Dr. Green first examined Cogdill on February 17, 1970 and his diagnosis was that Cogdill had compression fractures of vertebrae L2 and L3 and he also thought that Cogdill might well have a ruptured interverte-

bral disc, but at a location other than the disc space between L2 and L3 as ruptured discs rarely happen at that particular location. Dr. Green knew that Dr. Smith had surgically removed a ruptured disc, but did not know precisely which disc he removed since he was not precent at the operation. Dr. Green appeared to be of the opinion that the disc was either between L4 and L5 or between L5 and S1, but in any event not between L2 and L3. Dr. Green testified that Cogdill was disabled, suffering from both the interverte-bral disc and the compression fractures and that you could not separate one from the other as the cause of his dis-ability.

Dr. Harritt saw Codgill first on November 23, 1970 and examined him again as late as April 6, 1973. He testi-fied that Cogdill was still totally disabled and that his pres-ent condition was in no way related to the disc removal. X-rays made on April 6, 1973 indicated that the compres-sion fractures of L2 and L3 vertebrae had apparently healed but that such could still cause his then condition. When asked if he would diagnose Cogdill's condition as a "lame back" he replied "no," that such was a lay term and not a medical term. He went on to say that:

"The word lame, itself refers to crippled or disabled limbs, and doesn't really have any reference to the back." We quote further from the cross-examination of Dr. Har-ritt as follows:

"Q. But you say it means crippled or disabled limb; right?

"A. Yes, sir.

"Q. And as an adjective—

"A. Lame itself.

"Q. Lame means crippled or disabled and used as an adjective, so a lame back would therefore by your definition be a crippled or disabled back; is that right?

"A. No, sir, because as a matter of fact, the term lame back is incorrect English, because lame refers to a type of

description of individual or animal and not as part of the body. When you say lame, you say a lame person, or lame dog, or lame horse; but lame back, it's incorrect English. You can't draw any conclusions from it at all."

In passing upon the defense motion for a directed verdict the trial judge made the following pertinent remark:

"I think this reference to a lame back has something to do with a man who has some pain in the back that doesn't have anything organically wrong with the bones, bone structure, but what would this policy cover, Mr. Chappell?"

The reply of counsel was to the effect that, except for the first three months, no injury to or condition of the back, regardless of how serious, would entitle the insured to any benefits. The crux of this appeal is the insurer's pursuit of this contention that disability resulting from compressed fractures of the vertebrae of the spine, is a disability resulting from a "lame back" as that term is used in the policy and that consequently it is not liable for any further benefits.

Webster's International Dictionary, Third Edition, defines the word "lame" as follows:

"(1) physically disabled in any way;

"(2) having an arm or usually a leg disabled by injury, defect or extreme weariness."

The cardinal issue before this Court, however, is the meaning of the term "lame back" as used in the policy and no judicial, medical or text definition of that term has been cited or come to the attention of the Court to aid it in its decision. If the term "lame back" be construed to include fractures of the spine, or spinal column, it would seem to follow that the term would include almost every injury to the back or spine, however serious and if such a broad exclusion or limitation were intended it would have been very simple for the insurer to exclude from, or limit, coverage with respect to "every back injury, ailment or disorder of

whatsoever kind." If the term "lame back" had been intended to have so broad an application there would have been no need for the policy to limit coverage with respect to "sprain, strains or intervertebral disc conditions" as all such would have been included in the term "lame back." It logically follows that there is doubt and uncertainty, or ambiguity, as to what the insurer intended the words "lame back" to mean, or to include, when the insurer used that term in the preparation of its policy.

One entirely plausible construction of the term "lame back," in the context in which it was used in the policy is that its intent and purpose was to limit benefits to persons suffering from non-specific pains or ailments of the back which could not be readily diagnosed with any degree of certainty. We regard another likely purpose and intent of this language to be simply the discouragement of fraudulent claims or extended claims by malingerers. Assuming without deciding, that the construction of the term "lame back" urged by the insurer is a permissible one, it is well settled that the terms of an insurance policy should be construed most liberally in favor of the insured, and that in case of conflict or ambiguity, a construction will not be adopted that defeats recovery if the policy is reasonably susceptible of a meaning that will permit recovery. We uniformly give the insured the benefit of any doubt in the construction of the terms used in an insurance policy. See the numerous cases collected in West's South Carolina Digest, Insurance, Key No. 146(7).

We regard the ambiguity here as a patent one, arising upon the face of the policy, and therefore one for construction by the Court. See *Hann v. Carolina Casualty Insurance Company,* 252 S. C. 518, 167 S. E. (2d) 420. No point, however, was made below as to the nature of the ambiguity, and the cause was submitted to the jury as if the ambiguity were a latent one. In any event there was no error on the part of the lower court in denying

the defense motion for a directed verdict and no prejudice to the defendant in treating the ambiguity as a latent one and submitting the issue to the jury. Had the ambiguity been treated as a patent one and decided by the court, it is obvious, we think, that the court could not have soundly reached, under our rule of liberal construction, any result different from that reached by the jury.

In submitting the cause to the jury, his Honor instructed the jury that its verdict would be either for the defendant or for the plaintiff in the amount of $4,070.00. The appellant now asserts that such was an error in two respects:

"(1) Such was a charge upon the facts in violation of the constitution, and

"(2) That an inference could be drawn from the evidence that the respondent was disabled as a result of a non-covered condition, to wit a ruptured disc, until June 1970 when it was removed and that even if liable the insurer was liable for benefits only for the period of time subsequent to the disc removal surgery."

We deem these contentions to be without any merit. Assuming, without at all deciding, that the terminology "intervertbral disc conditions" used in the policy was intended to embrace something so serious as a ruptured disc and the necessary surgical removal thereof; there simply is no evidence in the record, we think, from which it could be reasonably inferred that the respondent's disability, prior to the disc surgery, was the result of the ruptured disc, independently of the other serious back injuries sustained by the respondent. Both serious injuries were sustained in the same accident, and the medical testimony was that the two were inseparable as far as disability was concerned and we think the only reasonable inference is that the respondent would have been and remained disabled as the result of the vertebrae fractures even if he had not perchance sustained a ruptured disc in the same accident. That respondent was still

disabled, at the time of the trial, is not controverted and hence, dependent upon the construction of the policy, he was entitled to recover either $4,070.00 or nothing. Being of the view that there was no prejudicial error the judgment below stands affirmed.

Affirmed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.