760 S.E.2d 794

**Diane KIRVEN, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**CENTRAL STATES HEALTH & LIFE CO., OF OMAHA, and Philadelphia American Life Insurance Company, Defendants.**

Appellate Case No. 2013–000273.

No. 27403.

Supreme Court of South Carolina.

Heard Nov. 19, 2013.

Decided June 25, 2014.

34

Richard A. Harpootlian, Graham L. Newman, M. David Scott, and Tobias G. Ward, Jr., all of Columbia, for Plaintiff.

John T. Lay and Laura W. Jordan, both of Columbia, and Robert L. Harris, of Richardson, TX, for Defendants.

## CERTIFIED QUESTIONS ANSWERED

Justice KITTREDGE.

We certified the following questions from the United States District Court for the District of South Carolina:

1. Can the definition of "actual charges" contained within S.C.Code Ann. Section 38–71–242 be applied to insurance contracts executed prior to the statute's effective dates?

2. Can the South Carolina Department of Insurance mandate the application of "actual charges" definition in S.C.Code Ann. Section 38–71–242 to policies already in existence on the statute's effective dates by prohibiting an insurance company from paying claims absent the application of that definition?

We answer both certified questions, "no."

### I.

This case concerns supplemental health insurance policies, which differ from ordinary health insurance policies in both purpose and operation. Indeed, "[s]upplemental insurance policies pay cash benefits directly to the policyholders, as opposed to primary insurance policies that pay benefits directly to a third-party health care provider." *Montague v. Dixie Nat. Life Ins. Co.*, No. 3:09–CV–687–JFA, 2011 WL 2294146, at *18–19 (D.S.C. June 8, 2011) (noting the reason for this difference lies in the purpose of the policies and stating "the benefits under specified disease policies have nothing to do with how much a particular cancer treatment may cost" because supplemental insurance policies contain a "two-fold

promise: a promise to pay for the medical treatment and a promise to provide its policyholders with additional monetary relief ... to cope with the myriad of other costs and expenses that arise from their battle with cancer, but are not covered by their primary health insurance policies."); *accord Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 182 n. 6 (5th Cir.2007) ("Although the fundamental purpose of *ordinary* health insurance coverage is to indemnify against loss from disease or illness, the purpose of a *supplemental* insurance policy, such as the one at issue in this case, is not only to cover medical expenses but also ... to provide supplemental income for general living expenses or any other purpose. Thus, the payment of benefits in amounts exceeding actual expenses does not lead to an unreasonable result." (quotations omitted)).

Plaintiff Diane Kirven purchased a supplemental Cancer and Specified Disease policy from defendant Central States Health and Life (Central States) in 1999. Under the policy, Central States promised to pay Kirven a defined benefit in an amount equal to, or based on a percentage of, the "actual charges" for certain medical and pharmaceutical cancer treatments. However, the term "actual charges" was not defined under the policy. Kirven was diagnosed with cancer in 2003, and she underwent chemotherapy and radiation treatments. Consistent with the understood purposes of a supplemental insurance policy, Central States paid Kirven benefits based on the amount she was billed by her medical providers.[1] The cancer fell into remission.

Some years later, on November 29, 2007, the United States Court of Appeals for the Fourth Circuit issued a decision construing the term "actual charges" in a supplemental cancer insurance policy virtually identical to Kirven's. *See Ward v. Dixie Nat'l Life Ins. Co. (Ward I)*, 257 Fed.Appx. 620 (4th Cir.2007) (per curiam). *Ward I* involved a dispute over how benefits paid in the amount of the "actual charges" were to be calculated.[2] *Id.* at 623. The Fourth Circuit found the meaning

---

1. In other words, Central States paid the amount listed on Kirven's medical billing statements, regardless of whether her primary health insurance providers were able to negotiate with providers to accept a lesser amount as payment-in-full for those services.

2. Specifically, the insureds contended the "actual charges" were the amounts billed to patients by their medical providers; however, the

of the phrase "actual charges" as used in Ward's policy was patently ambiguous and that South Carolina law "very clearly requires us to resolve the ambiguity in favor of the insured." *Id.* at 627 (citation omitted).

Approximately eight months later, as a direct response to *Ward I,* the General Assembly enacted South Carolina Code section 38–71–242, which includes a mandatory, default definition for "actual charges" in policies that, like Kirven's policy, do not define the term. The statute essentially codified the construction of the term "actual charges" in the manner advocated by the defendant insurance companies in *Ward I* and provides as follows:

(A)(1) When used in any individual or group specified disease insurance policy in connection with the benefits payable for goods or services provided by any health care provider or other designated person or entity, the terms "actual charge", "actual charges", "actual fee", or "actual fees" shall mean the amount that the health care provider or other designated person or entity:

(a) agreed to accept, pursuant to a network or other agreement with a health insurer, third-party administrator, or other third-party payor, as payment in full for the goods or services provided to the insured;

(b) agreed or is obligated by operation of law to accept as payment in full for the goods or services provided to the insured pursuant to a provider, participation agreement, or supplier agreement under Medicare, Medicaid, or any other government administered health care program, where the insured is covered or reimbursed by such program; or

(c) if both subitems (a) and (b) of this subsection apply, the lowest amount determined under these two subitems;

. . . .

(B) This section applies to any individual or group specified disease insurance policy issued to any resident of this State that contains the terms "actual charge", "actual charges",

---

insurance company contended the "actual charges" were the pre-negotiated discount amount providers agreed to accept as payment-in-full for services rendered to insureds. *Ward I,* 257 Fed.Appx. at 623–24.

"actual fee", or "actual fees" and does not contain an express definition for the terms "actual charge", "actual charges", "actual fee", or "actual fees".

(C) Notwithstanding any other provision of law, *after the effective date of this section, an insurer* or issuer of any individual or group specified disease insurance policy *shall not pay any claim or benefits* based upon an actual charge, actual charges, actual fee, or actual fees under the applicable policy in an amount *in excess of the "actual charge", "actual charges", "actual fee", or "actual fees" as defined in this section.*

S.C.Code Ann. § 38–71–242 (Supp.2013) (emphasis added).

In light of the enactment of section 38–71–242, on remand from *Ward I,* the *Ward* defendants argued that the statute prohibited them from paying "actual charges" as defined in *Ward I. See Ward v. Dixie Nat'l Life Ins. Co. (Ward II),* 595 F.3d 164, 171–72 (4th Cir.2010). The district court denied the *Ward* defendants' motion, finding the presumption against statutory retroactivity precluded application of section 38–71–242 to the *Ward* plaintiffs' insurance policies. The district court concluded the Fourth Circuit's *Ward I* definition of "actual charges" applied to the *Ward* plaintiffs' policies—not the definition found in section 38–71–242. *Id.*

On appeal, the Fourth Circuit affirmed the district court's finding that the presumption against retroactivity barred application of section 38–71–242 to the *Ward* plaintiffs' claims. *Id.* at 173. The Fourth Circuit noted that the *Ward* plaintiffs' claims arose prior to the statute's effective date and found the defendants failed to rebut the presumption against statutory retroactivity because "[n]either the statutory language nor the legislative history evinces any intent to apply the statute's definition to the insurance contracts in this case." *Id.* at 174–75.

In the instant case, Kirven's cancer recurred in 2009. Kirven continued to rely on the policy she purchased years earlier, long before the enactment of section 38–71–242. Kirven underwent chemotherapy and filed a claim seeking benefits under the policy with Philadelphia American Life Insurance Co. (Philadelphia American), which had acquired Central States' South Carolina policies in 2005. Philadelphia Ameri-

can required Kirven to submit an explanation of benefits (EOB) form as documentation of the discounted amounts her primary health insurers had negotiated to pay for her medical treatment. Unlike Central States had done previously, Philadelphia American used the amount in the EOB to calculate the benefit payable to Kirven consistent with the definition of "actual charges" set forth in section 38–71–242. Thereafter, Kirven filed suit in federal court seeking a declaratory judgment adjudicating the term "actual charges" within her insurance policy and damages from the alleged breach of that contract.

In her lawsuit, Kirven claims the definition of "actual charges" in section 38–71–242 cannot be applied retroactively to policies that existed prior to its enactment. The parties agree the legal definition of the term "actual charges," as that term is used in Kirven's policy, is dispositive of the issues in the case. As a result, the parties jointly moved to certify to this Court two separate questions regarding the applicability of section 38–71–242.

## II.

Kirven argues section 38–71–242 may not be applied to preexisting contracts for several reasons: the presumption against statutory retroactivity and the doctrine of constitutional avoidance require a prospective construction of section 38–71–242, and, in any event, the application of section 38–71–242 to preexisting insurance policies would violate the Contract Clause of the United States and South Carolina constitutions. We address each of these arguments in turn.

### A. Presumption Against Retroactivity

Kirven argues the application of section 38–71–242 to existing insurance policies is prohibited by the presumption against statutory retroactivity and the doctrine of constitutional avoidance. We disagree.

"It is well-established that '[t]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.'" *Grier v. AMISUB of S. C., Inc.*, 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012) (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "'What a

legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature.' " *Id.*

However, "[c]ourts routinely confront [ ] ambiguities in legislative drafting and have developed judicial default rules for just such occasions." *Tasios v. Reno,* 204 F.3d 544, 549 (4th Cir.2000). "Both federal and South Carolina courts employ a robust presumption against statutory retroactivity." *Ward II,* 595 F.3d at 172 (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Jenkins v. Meares,* 302 S.C. 142, 146, 394 S.E.2d 317, 319 (1990)). "Under this presumption, courts assume that statutes operate prospectively only, to govern future conduct and claims, and do not operate retroactively, to reach conduct and claims arising before the statute's enactment." *Id.* "Since legislatures generally intend statutes to apply prospectively only, this rule of statutory construction is a means of giving effect to legislative intent." *Id.* (citing *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 304–05, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)).

Unlike the claims in *Ward,* which arose prior to the enactment of section 38–71–242, Kirven's claims arose *after* the statute's June 4, 2008 effective date. By its terms, section 38–71–242 applies to claims submitted after the statute's effective date of June 4, 2008. Indeed, unlike the claims in *Ward,* the General Assembly expressly prescribed the statute's temporal reach to include the claims at issue in this case. Accordingly, "there is no need to resort to judicial default rules," such as the presumption against retroactivity or the doctrine of constitutional avoidance, to determine whether the legislature intended for section 38–71–242 to apply to Kirven's claims. *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *see Hodges,* 341 S.C. at 85, 533 S.E.2d at 581 ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." (citation omitted)). Thus, neither the presumption against retroactivity nor the doctrine of constitutional avoid-

ance bars the application of section 38–71–242 to Kirven's claims.

Nevertheless, our analysis does not conclude here simply because the General Assembly has clearly expressed its intent concerning the temporal reach of section 38–71–242. Rather, we must next determine whether application of that section to Kirven's insurance policy violates the Contract Clause.

## B. Contract Clause Analysis

Kirven argues the section 38–71–242 definition of actual charges cannot be applied to insurance contracts entered into prior to the statute's effective date because such an application would violate the Contract Clause of the state and federal constitutions. We agree.

Article 1, section 10 of the United States Constitution provides that no state shall pass a law impairing the obligation of contracts. Likewise, the South Carolina Constitution prohibits laws impairing the obligation of contracts. S.C. Const. art. I, § 4.

■■ " 'Although the Contract Clause appears literally to proscribe any impairment, the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.' " *Harleysville Mut. Ins. Co. v. State*, 401 S.C. 15, 35, 736 S.E.2d 651, 661 (2012) (Beatty, J., concurring in part, dissenting in part) (quoting *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 21, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)) (internal marks omitted). "Retroactive legislation, though frequently disfavored, is not absolutely proscribed." *In re Marriage of Bouquet*, 16 Cal.3d 583, 128 Cal.Rptr. 427, 546 P.2d 1371, 1376 & n. 8 (1976) (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1797)). Indeed, a state may pass retrospective laws absent direct constitutional prohibition. *Freeborn v. Smith*, 69 U.S. 160, 174–75, 2 Wall. 160, 17 L.Ed. 922 (1864).

■ Thus, to determine whether the Contract Clause limits application of certain laws, the following framework applies:

A three-step analysis applies to a Contract Clause claim. First, the Court must determine whether the State law has

in fact operated as a substantial impairment of a contractual relationship. If the State regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation. Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of contractual rights is based upon reasonable conditions and is of a character appropriate to the public purpose.

*Mibbs, Inc. v. S.C. Dep't of Rev.*, 337 S.C. 601, 607, 524 S.E.2d 626, 629 (1999) (citations omitted). For purposes of determining whether there was a substantial impairment of contract, the Court considers whether the law in question altered the reasonable expectations of the parties. *Id.* at 608, 524 S.E.2d at 629 (citing *Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.*, 323 S.C. 532, 542, 476 S.E.2d 481, 486–87 (1996)).

The Honorable Joseph F. Anderson, Jr., United States District Court Judge for the District of South Carolina, has recently addressed a similar Contract Clause argument regarding the application of the section 38–71–242 definition of "actual charges" in the context of supplemental cancer insurance policies. *See Montague v. Dixie Nat. Life Ins. Co.*, No. 3:09–CV–687–JFA, 2011 WL 2294146 (D.S.C. June 8, 2011). We adopt the sound and thorough reasoning of the highly regarded and learned federal judge expressed in *Montague* and find application of section 38–71–242 to Kirven's claims would substantially impair the parties' contractual relationship in violation of the Contract Clause.

We acknowledge the legislature has the authority to modify a court's interpretation of a contractual term; however, when it does so in a manner that retroactively modifies existing contractual obligations, such legislation runs the risk of violating the Contract Clause, as it does here. *See Harleysville*, 401 S.C. at 29–30, 736 S.E.2d at 658 (observing that it is within the legislature's power to statutorily define terms used in insurance policies but holding that applying new statutory definitions to existing contracts violates the Contract Clause); *see also Ward II*, 595 F.3d at 176 (noting retroactive application of statutes potentially implicates the Contract Clause, the Takings Clause, and the Due Process Clause). We find that

application of section 38–71–242 to Kirven's policy would substantially impair her existing contract rights.[3]

We are in further agreement with Judge Anderson's thorough analysis that recognized the state may constitutionally impair a party's contract rights provided the impairment serves a significant and legitimate public purpose and that the state law is reasonably related to achieving that public purpose. As with the insurers in *Montague*, benefits were paid to Kirven for many years based on what she was billed by her medical providers; "therefore, it is a stretch to contend that the Defendants now need protection from the terms of the adhesion contract[ ] . . . issued [to] the Plaintiff[ ]." *Montague*, 2011 WL 2294146, at *18. When the insurance industry failed in court, "they summoned the General Assembly to legislative-

---

3. Defendants alternatively argue that each time Kirven paid the monthly premium, her policy was renewed and a new and independent insurance contract was formed; thus, according to Defendants, the definition of "actual charges" found in section 38–71–242 was incorporated in Kirven's "new" policies with each monthly renewal since the enactment of that section. As a result, section 38–71–242 applies to the purported new policies and to subsequent claims arising thereunder. We find Defendants' position is manifestly without merit and that Defendants' reliance on *Webb v. South Carolina Insurance Co.*, 305 S.C. 211, 407 S.E.2d 635, (1991) is misplaced. In *Webb*, the Court found the underinsured motorist policy at issue was not one with a grace period or that the insurer was compelled to renew, but instead, was one that specifically contemplated the renegotiation of essential terms upon policy renewal; therefore, each renewed policy constituted a new contract. *Id.* at 213, 407 S.E.2d at 636. In contrast, Kirven's policy states that it is "GUARANTEED RENEWABLE FOR LIFE" and contains a specific renewal agreement that provides a thirty-one-day payment grace period during which the policy stays in force. Accordingly, Kirven's policy is a continuing contract. *See Knight v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 20, 23, 374 S.E.2d 520, 522 (Ct.App.1988) (finding that where a policy renewal is consummated pursuant to a provision in the expiring policy, "the renewal is an extension of the old contract"); *Sur. Indem. Co. v. Estes*, 243 S.C. 593, 598, 135 S.E.2d 226, 228 (1964) (finding the presence of a grace period in a policy renewal provision "clearly contemplates a continuing policy rather than successive, new and independent contracts"); *see also Montague v. Dixie Nat. Life Ins. Co.*, No. 3:09–687–JFA, 2010 WL 2428805, at *2–4 (D.S.C. June 11, 2010) (finding monthly premium payments on or after the effective date of section 38–71–242 did not constitute the formation of new contracts and, thus, the supplemental insurance policies at issue constituted insurance contracts that were "continuous and [did] not expire").

ly contract for them." *Id.* As Judge Anderson observed, section 38–71–242 "merely protects the [insurers'] private interests." *Id.* at *17. We conclude "there has been no showing that section 38–71–242's alteration of the meaning of 'actual charges' in [Kirven's policy] was necessary to meet an important societal problem related to the affordability of specified disease policies going forward." *Id.* at *18. In concluding that section 38–71–242 does not support a legitimate public purpose, we are influenced by the nature and purpose of supplemental insurance policies, as we described above. *See id.* ("The reason for this difference lies in the purpose of the policies. Through primary insurance policies, insurance companies agree to pay a doctor for the treatment he or she provided an insured. Through supplemental insurance policies, the insurance companies agree to pay the insureds cash ... [and insureds] are permitted to use the cash benefits in any manner they desire.").

We answer the first certified question, "no."

### III.

 Kirven also argues any attempt by the South Carolina Department of Insurance (Department) to mandate the application of section 38–71–242 to pre-existing policies would exceed the scope of the Department's authority and violate the Contract Clause of the state and federal constitutions. We agree.

Shortly after the enactment of section 38–71–242, the Department issued Bulletin 2008–15 (Bulletin), which directly addressed the enactment of that section. The Bulletin recited the text of section 38–71–242 and stated:

This statute codifies the Department's longstanding interpretation of the term "actual charges" or similar wording in supplemental cancer policies. For many years, ... the Department has consistently interpreted those terms to require insurers to pay benefits on an expense-incurred basis, and not to pay benefits to insureds in amounts greater then [sic] a medical provider agreed to accept as payment in full for services rendered to the insured.

.... The statute embodies the basic principle of insurance, codified at S.C.Code Ann. § 38–1–20(19), that insurance is a

contract of indemnification, and that an insured must suffer an actual out-of-pocket loss to receive payment of benefits. This construction of the term "actual charges" ensures that a few insureds and beneficiaries do not receive windfalls in the form of payments of benefits greater than sums actually paid to health care providers, either by insureds or beneficiaries, or by a primary health insurer. Such windfalls inevitably would cause premiums to increase exponentially for all and would restrict the availability and affordability of supplemental disease policies to the detriment of the citizens of this state. . . . .

Unless expressly required to do so by a final judgment issued before June 4, 2008[,] by a court of competent jurisdiction, insurers that have issued supplemental cancer policies or other specified disease policy [sic] in this state containing the term(s) "actual charge," "actual charges," "actual fee," or "actual fees" and that do not contain an express definition of those terms *may not pay any claim or any benefit in excess of the amount specified* in S.C.Code Ann. 38–71–242.

(emphasis added).

Defendants contend the Bulletin requires them to apply the definition of "actual charges" found in section 38–71–242 to all policies, regardless of the issuance date. However, Defendants also acknowledge that, to the extent this Court determines section 38–71–242 does not apply to policies issued before its effective date, the Department is not entitled to enforce the statute—by this Bulletin or otherwise—in a manner contrary to that holding.

Moreover, we find the Bulletin is merely a statement of policy guidance and lacks the force of law.[4] S.C.Code Ann.

---

4. Indeed, the text of the Bulletin itself acknowledges it lacks the force of law:

Bulletins are the method by which the Director of Insurance formally communicates with persons and entities regulated by the Department. Bulletins are departmental interpretations of South Carolina insurance laws and regulations and provide guidance on the Department's enforcement approach. Bulletins do not provide legal advice. Readers should consult applicable statutes and regulations or contact an attorney for legal advice or for additional information on the impact of that legislation on their specific situation.

§ 1–23–10(4) ("Policy or guidance issued by an agency other than in a regulation does not have the force or effect of law."); *see Doe v. S.C. Dep't of Health & Human Servs.*, 398 S.C. 62, 68 n. 7, 727 S.E.2d 605, 608 n. 7 (2011) ("[W]e hold an agency guideline does not have the force of law, and in any event, can never trump a regulation. . . . *Policy or guidance issued by an agency other than in a regulation does not have the force or effect of law.*" (citation omitted)). Further, in any event, we find that our answering the first certified question "no" requires us to answer the second certified question in the same manner.

**IV.**

We answer both certified questions, "no."

**CERTIFIED QUESTIONS ANSWERED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.