RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ITALO PEDICINI,
       *Plaintiff-Appellant/Cross-Appellee,*

       *v.*

Nos. 10-6270/6301

LIFE INSURANCE COMPANY OF ALABAMA,
       *Defendant-Appellee/Cross-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:08-cv-62—Joseph H. McKinley, Jr., Chief District Judge.

Decided and Filed: June 21, 2012

Before: MERRITT and MOORE, Circuit Judges, and MAYS, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Thomas W. Davis, Glasgow, Kentucky, for Appellant/Cross-Appellee. Thomas N. Kerrick, KERRICK, STIVERS, COYLE & VAN ZANT, P.L.C., Bowling Green, Kentucky, Charles A. Dauphin, BAXLEY, DILLARD, DAUPHIN, McKNIGHT & JAMES, Birmingham, Alabama, for Appellee/Cross-Appellant.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. This appeal and cross-appeal arise from a dispute regarding the meaning of the term "actual charges" in the context of a supplemental cancer-insurance policy. The policyholder, Italo Pedicini ("Pedicini"), contends that "actual charges" refers to the amount billed by a medical provider, while the insurer, Life Insurance Company of Alabama ("LICOA"), argues that it refers to the

_____

[*] The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

amount actually accepted by a medical provider as full payment. Pedicini sued LICOA for breach of contract and bad faith after LICOA refused to pay Pedicini benefits due under his policy pursuant to Pedicini's interpretation of "actual charges." The district court granted summary judgment in Pedicini's favor on the breach-of-contract claim and in LICOA's favor on the bad-faith claims. Both parties appeal their respective adverse rulings. In addition, Pedicini argues that the district court abused its discretion in denying Pedicini leave to file a second amended complaint and additional discovery. Because the district court correctly granted summary judgment for Pedicini as to the breach-of-contract claim, but incorrectly granted summary judgment for LICOA as to the bad-faith claims, we AFFIRM the district court's judgment in part and REVERSE in part. We also hold that the district court did not abuse its discretion with respect to Pedicini's motion to amend, and we remand for consideration by the district court as to whether further discovery is necessary or justified.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Background

A supplemental cancer-insurance policy is a "valued policy" that ties cash benefits to charges for qualifying cancer treatments received. R. 43-3 (Christensen Aff. at 2). The cash benefits are paid directly to the insured, and the insured is at liberty to use them as he or she wishes. *Id.* Thus, while a policyholder can use these benefits to offset the cost of medical treatment, a policyholder with health insurance otherwise covering those medical costs can utilize the benefits to offset extraneous costs associated with illness or for any purpose whatsoever. *Id.*

In 1990, Pedicini purchased a supplemental cancer-insurance policy from LICOA. R. 17-4 (1990 Policy at 2). The policy provided for unlimited cash benefits equal to the "usual and customary charges made for" radiation or chemotherapy received as treatment for cancer. *Id.* at 4. The policy defined "usual and customary charges" as "[t]he usual charge made by a person or entity furnishing the services, treatment or material." *Id.* at 10. Because Pedicini's policy provided unlimited benefits for

chemotherapy and radiation treatments, his premiums increased dramatically over time. R. 31 (Pedicini Dep. at 12:6-13). As a result, in 2001, Pedicini contemplated terminating his policy and solicited the advice and assistance of the insurance agent from whom he purchased car and homeowners insurance, Jerry Hardison ("Hardison"). *Id.* at 12:18-20, 13:7-9. Hardison contacted LICOA and negotiated a virtually identical policy that capped Pedicini's benefits for chemotherapy and radiation treatments at twenty-five thousand dollars per year, thereby significantly lowering the requisite premium payments. *Id.* at 12:22-13:6. The new policy tied the radiation and chemotherapy benefits to "actual charges" for those treatments and defined "actual charges" as "actual charges made by a person or entity furnishing the services treatment or material." R. 17-4 (2001 Policy at 10, 16). The new policy became effective on October 1, 2001. *Id.* at 3.

Unbeknownst to Pedicini, approximately eight months earlier in February 2001, LICOA changed its benefit-payment practices. R. 32 (Casey Dep. at 25:11-14). For approximately twenty years prior to February 2001, LICOA paid benefits tied to "actual charges" according to the amount billed by medical providers regardless of the amount medical providers accepted as full payment. *See id.* at 26:1-5. However, in February 2001, LICOA abandoned this policy and began paying benefits equal to the amount accepted as full payment by medical providers. *Id*. at 123:13-17; 153:11-17. In many instances, this resulted in lower benefit payments because of discounted rates required by Medicare and/or previously negotiated by private health-insurance providers. *See id*. at 87:1-89:12. LICOA contends that it enacted this change upon learning that new medical-billing practices were resulting in overcharges and a surplus in benefit distributions. *Id*. at 25:11-19. LICOA did not provide notice to policyholders of the change, although it did provide notice to its servicing agents. *Id*. at 31:22-33:10. Many policyholders became aware of the change only upon receiving a reduced benefit payment. *See id.*

In February 2007, Pedicini was diagnosed with cancer. R. 68-3 (Pedicini Aff. at 2). After Pedicini began receiving treatments qualifying for the chemotherapy and

radiation benefit under his policy, he submitted claims to LICOA. *See* R. 31 (Pedicini Dep. at 21:5-12). Upon receiving his first benefit payment, Pedicini realized that LICOA was not providing him benefits equal to the amount billed by his medical provider, but rather only equal to the discounted amount accepted by his medical provider in light of his status as a Medicare recipient. *Id.* at 21:15-22:20.[1] When Pedicini called LICOA to inquire about the discrepancy, LICOA informed him that LICOA would only pay benefits equal to the amount accepted by the medical provider as full payment in light of Medicare discounts. *Id*. at 21:21-22:20. LICOA also instructed Pedicini to include documentation of the amount actually accepted by his medical provider as full payment, *i.e.*, evidence of payments made by Medicare and any other health insurance provider, when submitting future claims. *Id.* at 22:8-20. To date, LICOA has paid Pedicini benefits under the policy only according to LICOA's interpretation of "actual charges."

**B.  Procedural History**

Pedicini filed a complaint against LICOA in Kentucky state court and asserted claims for breach of contract, breach of good faith and fair dealing, bad faith, violations of the Kentucky Unfair Claims Settlement Practices Act, and punitive damages. R. 1-3 (First Amended Compl.). LICOA removed the action to federal district court on the basis of diversity jurisdiction. R. 1 (Notice of Removal). The district court bifurcated the breach-of-contract claim from the bad-faith claims, R. 25 (Dist. Ct. Order), and both parties moved for summary judgment as to the breach-of-contract claim, R. 42 (Plaintiff Summary Judgment Mot.); R. 44 (Defendant Summary Judgment Mot.). The district court granted summary judgment in Pedicini's favor, finding that because the term "actual charges" was ambiguous, it must be construed in Pedicini's favor under Kentucky law. R. 60 (Dist. Ct. Op. at 11).

---

[1]Pedicini also holds a Medicare supplemental policy with Anthem Blue Cross and Blue Shield, which offsets the cost of treatments not covered by Medicare. R. 31 (Pedicini Dep. at 22:21-23:10). As a result, Pedicini has paid no out-of-pocket expenses for his cancer treatments. *Id.* at 23:11-13.

Thereafter, LICOA moved for summary judgment on the remaining bad-faith claims.  R. 66 (Defendant Summary Judgment Mot.).  In addition to responding to LICOA's summary judgment motion, Pedicini entered a number of deposition notices, *see* R. 68 (Response to Summary Judgment Mot.); R. 69-75 (Dep. Notices), and moved to file a second amended complaint, R. 78 (Amended Compl. Mot.).  The district court granted LICOA's motion for summary judgment finding "that because the interpretation of the term 'actual charges' under the supplemental cancer insurance policy is fairly debatable, Plaintiff's common law and statutory bad faith claims may not be maintained."  R. 82 (Dist. Ct. Op. at 4).  The district court also denied Pedicini's motion to file an amended complaint as untimely and declined to grant further discovery.  *Id.* at 6.  The district court entered judgment as to all claims on September 20, 2010.  R. 83 (Judgment).  Pedicini and LICOA timely appealed and cross-appealed, respectively. R. 84 (Notice of Appeal); R. 85 (Notice of Cross-Appeal).

## II.  ANALYSIS

### A.  Breach-of-Contract Claim

LICOA challenges the district court's conclusion that Pedicini is entitled to summary judgment on the breach-of-contract claim because the term "actual charges" is ambiguous as a matter of Kentucky law.  We review a grant of summary judgment on a breach-of-contract claim de novo.  *See Jones v. Union Cnty.*, 296 F.3d 417, 423 (6th Cir. 2002).

"As a federal court sitting in diversity, we apply the choice-of-law provisions of the forum state."  *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Kentucky law, the law of the state with "the most significant relationship to the transaction and the parties" governs the dispute.  *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 42 (Ky. 2004) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)) (internal quotation marks omitted).  The parties do not dispute that Kentucky law applies.

Under Kentucky law, "the construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2008).  Kentucky law requires that an ambiguous term in an insurance policy "be liberally construed so as to resolve all doubts in favor of the insured." *Id.*  "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).  No Kentucky court has decided whether the contractual term "actual charges" is ambiguous under Kentucky law, and the Sixth Circuit has only alluded tangentially to a similar issue.  *See Gooch v. Life Investors Ins. Co. of Am.* (*In re Life Investors Ins. Co. of Am.*), 589 F.3d 319, 326 (6th Cir. 2009) (expressly acknowledging that court need not consider merits in the context of the claim presented).

The district court concluded that the policy term "actual charges" is ambiguous and, therefore, must be construed in Pedicini's favor.  LICOA argues that "actual charges" is not ambiguous and plainly refers to the amount accepted by a medical provider as full payment for the service or treatment.  In support, LICOA cites an opinion from the Middle District of Alabama, which concluded that "actual charges" was unambiguous and emphasized dictionary definitions of "'actual' [as] 'real,' 'existing,' not 'potential' or 'possible.'" *Claybrook v. Cent. United Life Ins. Co.*, 387 F. Supp. 2d 1199, 1204 (M.D. Ala. 2005) (quoting THE AMERICAN HERITAGE DICTIONARY (4th ed. 2000)).[2]  The weight of authority is against LICOA's position.

---

[2]LICOA also cites *Jarreau v. Cent. United Life Ins. Co.*, No. Civ. A. 05-83-FJP-SCR, 2006 WL 2086011 (M.D. La. May 16, 2006) (unpublished opinion), and *Ward v. Dixie Nat'l Life Ins. Co.*, No. 3:03-3239-JFA, 2006 WL 1529398 (D.S.C. May 10, 2006), *vacated*, 257 F. App'x 620 (4th Cir. 2007) (unpublished opinion).  However, *Jarreau* merely summarily adopts the decisions in *Ward* and *Claybrook*. Moreover, the District Court of South Carolina's decision in *Ward* was eventually overturned. The District Court of South Carolina had granted summary judgment in favor of the insurer on the breach-of-contract claims after certifying a statewide class of policyholders. *Ward*, 257 F. App'x at 622. The Fourth Circuit initially affirmed class certification, but concluded that summary judgment on the contract claims was improper and, thus, remanded for further proceedings. *Id.*  Both parties petitioned the Fourth Circuit for rehearing and the insurer petitioned for rehearing en banc. *Id.*  "Because no member of the court called for a vote on [the insurer's] petition for rehearing en banc, the petition was denied." *Id.* at 622 n.2 (citing Fourth Circuit Local Rule 35(b)).  However, the Fourth Circuit panel did grant Ward's petition for rehearing and, concluding that the policy term "actual charges" was "patently ambiguous," ordered that summary judgment be entered in Ward's favor on the breach-of-contract claim. *Id.* at 627.  In the aftermath of the decision, South Carolina enacted legislation defining "actual charges" as the amount accepted by a medical provider as full payment, but the Fourth Circuit declined to apply the statute retroactively and affirmed the district court's judgment awarding substantial damages to the plaintiff class.

The Fourth and Fifth Circuits, the only circuits to address the issue squarely, have held that the term "actual charges" is ambiguous. *Ward v. Dixie Nat. Life Ins. Co.*, 257 F. App'x 620, 627 (4th Cir. 2007) (unpublished opinion), *cert. denied*, 555 U.S. 938 (2008); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 184 (5th Cir. 2007). In *Ward*, while the Fourth Circuit concluded that "actual charges" is a term of art, it nevertheless found the term "patently" ambiguous after surveying definitions in the medical context. 257 F. App'x at 625-26; *see also Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 170 (4th Cir. 2010) (affirming class action damages award based on "actual charges" including full amount billed by medical providers). In *Guidry*, the Fifth Circuit concluded that the *Black's Law Dictionary* definition of "'actual' as '[r]eal, substantial; existing presently in fact'" just as reasonably suggested that "actual charges" means the amount billed rather than the amount accepted as full payment. 512 F.3d at 182-83 (alteration in original) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)). The Fifth Circuit also took issue with the insurer's position that the term should be unambiguously construed in its favor given that the insurer had previously paid benefits equal to the amount billed by the medical provider. *Id.* at 184. The court classified the insurer's position as "suspect" and noted that it "seems very strange that a for-profit company would continue to pay benefits for years based on the larger billed amount when it was allegedly so clear that 'actual charges' meant the amount of the discounted bill." *Id.*

The Eleventh Circuit addressed a related issue and held that the term "actual charges *incurred*" unambiguously referred to the "amount the provider accepts from an insurer as full satisfaction of the policyholder's liability." *Phila. Am. Life Ins. Co. v. Buckles*, 350 F. App'x 376, 379 (11th Cir. 2009) (unpublished opinion) (emphasis added) (internal quotation marks omitted). In so concluding, the Eleventh Circuit relied on the meaning of the qualifying word "incurred," expressly declining "to consider the meaning of 'actual charges' standing alone." *Id.* Though not conclusive, the Eleventh Circuit's decision lends support to the conclusion that "actual charges" is ambiguous. Were the term "actual charges" as clear as LICOA suggests, it seems unlikely that two

*Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 170 (4th Cir. 2010).

of our sister circuits would hold otherwise with a third taking pains to avoid deciding the question entirely.

We hold that the term "actual charges" is ambiguous.  As evidenced by the decisions of our sister circuits, the thoughtful arguments presented by both parties, and LICOA's shift in its benefit-payment practices, it is clear that "a reasonable person would find [the term "actual charges"] susceptible to different or inconsistent interpretations" thus making it ambiguous under Kentucky law. *See Cantrell Supply*, 94 S.W.3d at 385.  We agree with the Fifth Circuit that dictionary definitions are unhelpful, as "real" and "existing" charges could just as reasonably refer to the billed amount as well as to the amount accepted as full payment.  Moreover, the fact that LICOA paid benefits equal to the amount billed for approximately twenty years prior to February 2001 seriously undermines its position that the term "actual charges" unambiguously means the amount accepted as full payment.  While perhaps LICOA is uncannily altruistic, it is more likely that the change in its benefit-payment practices reflects LICOA's own struggles with the ambiguous terms of its policies.  Because the term is ambiguous, it must be construed in favor of Pedicini as a matter of Kentucky law.  *See Bituminous,* 240 S.W.3d at 638.  Accordingly, we affirm summary judgment in favor of Pedicini on the breach-of-contract claim.

## B.  Bad-Faith Claims

Pedicini challenges the district court's determination that he cannot sustain his bad-faith claims under Kentucky law.  We review the district court's summary judgment determination de novo.  *See Jones*, 296 F.3d at 423.

Under Kentucky law, a plaintiff must establish three elements to succeed on a bad-faith claim:  "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (internal quotation marks

omitted).**3**  Based on the resolution of the breach-of-contract claim, it is clear that LICOA had an obligation to pay Pedicini the full amount billed for the covered medical services.  Thus, the first element of the test is satisfied.  However, the underlying merits of an individual's insurance claim are not dispositive with respect to a claim of bad faith. *See Cowan v. Paul Revere Life Ins Co.*, 30 F. App'x 384, 388 (6th Cir. 2002) (unpublished opinion).  Pedicini must also demonstrate the second and third elements of the test.

The district court relied on *Empire Fire & Marine Insurance Co. v. Simpsonville Wrecker Service, Inc.,* 880 S.W.2d 886, 891 (Ky. 1994), to find that Pedicini failed to establish the second element of the bad-faith test.  In *Empire Fire*, the Kentucky Supreme Court held "that where there is a legitimate first-impression coverage question for purposes of Kentucky law and recognized authorities support the insurer's position in denying coverage, the insured's claim is fairly debatable as a matter of law and will not support a claim of bad faith."  *Id.*  Pedicini argues that it is not *Empire Fire*, but *Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2001), that controls the outcome in this case.  In *Johnson*, the Kentucky Supreme Court held that an insurer that had allegedly conspired with appraisers to avoid paying the full amount of compensation due to an insured was not entitled to summary judgment on a bad-faith claim.  *Id.* at 371-72.  We agree with Pedicini that summary judgment for LICOA on the bad-faith claims is improper in this instance.

An objective assessment of the legal landscape evidences that LICOA lacked a reasonable basis in law for disputing Pedicini's claim to benefits according to his interpretation of "actual charges."  Under clearly established Kentucky law, ambiguous contractual terms are construed in favor of the insured.  The term "actual charges" is "patently ambiguous," *Ward*, 257 F. App'x at 625-27; the use of the term in the supplemental policy is hopelessly circular, as the term "actual charges" even appears within its own definition in the policy.  Moreover, for twenty years prior to February

---

**3**These requirements apply whether the bad-faith claim is based in common law or statute. *Shepherd v. Unumprovident Corp.*, 381 F. Supp. 2d 608, 612 (E.D. Ky. 2005) (citing *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989)).

2001, LICOA had paid benefits equal to the amount billed by medical providers, inspiring expectations among its policyholders regarding the value of their benefits. In light of these facts, LICOA should have realized that unilaterally altering its definition of "actual charges" was likely to result in legal claims against it by its policyholders and that, under Kentucky law, LICOA would lack a reasonable basis for denying those policyholders relief. LICOA points to no legal authority contemporaneous with its February 2001 policy change suggesting otherwise. The opinions that LICOA cites as "recognized authorities" in support of its position all post-date February 2001 and thus could not have informed LICOA's determination of the reasonableness of its action at that time. *See Empire Fire,* 880 S.W.2d at 889 (citing authority relied upon by the insurer as being in existence "as of the date of appellee's loss"); *Phelps*, 245 F. App'x at 487 (same); *Cowan*, 30 F. App'x at 387 (same). As a result, it is difficult to see how LICOA can maintain that the proper resolution of its dispute with Pedicini is "fairly debatable as a matter of law." *Empire Fire,* 880 S.W.2d at 889.

Moreover, based on the facts pleaded by Pedicini, a reasonable jury could conclude that the third element of the bad-faith test is satisfied: that LICOA acted knowingly or in reckless disregard of the lack of legal basis for its interpretation. LICOA did not alter its benefit-payment practices in an open and transparent manner. Those currently receiving benefits learned of the change only upon receiving a decreased benefit payment after the change came into effect, and other policyholders not yet qualifying for the receipt of benefits, like Pedicini, did not learn of the change until years later when they became ill and eligible to receive benefits. As a result of the change, LICOA was able to transform its profitability from a loss of over two million dollars in calendar year 2000 to a profit of approximately one million and seven hundred thousand dollars in calendar year 2001. From these facts a reasonable jury could conclude that LICOA acted in bad faith by concealing changes in its benefit-payment practices to avoid the loss of premium payments essential to its profitability in calender year 2001. The Kentucky Supreme Court has found summary judgment on a bad-faith claim improper amidst similar allegations of deceit in furtherance of pecuniary gain. *See Johnson*, 36 S.W.3d at 372, 375 (denying summary judgment on bad-faith claim where

insurer allegedly conspired with appraisers to undervalue policyholder's claim); *see also Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276 (Ariz. 2000) (en banc) (denying summary judgment in favor of insurer where insurer allegedly refused to negotiate a reasonable settlement with insured, who ended up receiving an arbitration award more than six times greater than that offered by the insurer).[4]

Based on the foregoing, we conclude that sufficient factual disputes surround the bad-faith claims such that summary judgment for LICOA is improper. Accordingly, we reverse the district court's grant of summary judgment in favor of LICOA on these bad-faith claims and remand for further proceedings.

## C.  Amended Complaint and Discovery Motions

Pedicini also challenges the denial of his motion for leave to file a second amended complaint and the denial of his motion for additional discovery. We review the district court's decision in both regards for an abuse of discretion. *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 320 (6th Cir. 2007); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).

Pedicini argues that the district court abused its discretion in refusing leave to amend the complaint in light of LICOA's failure to disclose that the Kentucky Department of Insurance found that LICOA's change in the interpretation of "actual charges" discriminated against policyholders and violated KRS 304.12-080. *See* R. 68-6 (Rate Filing Approval Order at 2). Pedicini requests that the complaint be amended to reflect an additional cause of action for discrimination under Kentucky law as well as additional evidence obtained during discovery in support of the bad-faith claims. The district court did not abuse its discretion in determining that Pedicini's request to add the discrimination claim was untimely and should have been made prior to the resolution of the breach-of-contract claim. Counsel's questioning during the Casey deposition gave clear indication that counsel was aware of possible claims of discrimination in relation

---

[4]Although in a distinct factual context, this Court also recently reversed a grant of summary judgment in favor of a defendant on a bad-faith claim under Kentucky law. *See Phelps v. State Farm Mut. Ins. Co.*, --- F.3d ---, 2012 WL 1889396, *6 (6th Cir. May 25, 2012).

to LICOA's new charging policy, and counsel did not need the Kentucky Department of Insurance's finding to plead this claim. *See* R. 32 (Casey Dep. at 140:4-141:1). However, in light of our reversal of the district court's grant of summary judgment in favor of LICOA on the bad-faith claims, we remand for further consideration by the district court as to whether leave to amend the complaint in support of the bad-faith claims is proper.

Because we reverse the district court's grant of summary judgment in favor of LICOA on the bad-faith claims, Pedicini's objections to a decision on summary judgment prior to additional discovery are moot. In light of the remand, however, the district judge may consider whether any further discovery is necessary or appropriate.

Accordingly, we affirm the district court's rulings on both motions.

### III.  CONCLUSION

Based on the foregoing, we AFFIRM the judgment of the district court granting summary judgment to Pedicini on the breach-of-contract claim and denying Pedicini's motion to file a second amended complaint and Pedicini's motion for additional discovery. We VACATE the district court's grant of summary judgment in favor of LICOA on the bad-faith claims and REMAND for proceedings consistent with this opinion.