**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0354n.06

No. 17-6415

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 17, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RUSSELL V. POPE, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| TERRY CARL, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | **OPINION** |
| | ) | |

Before: MOORE, KETHLEDGE, and STRANCH, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Russell Pope, a nurse working for a company that provides medical services to jails, worked as a psychiatric nurse at Kenton County Jail. After Pope complained to his employer about inappropriate sexual behavior and harassment by a fellow nurse, the employer investigated Pope's complaint and determined that a jail deputy had participated in some of the inappropriate conduct. Pope alleges that after the Kenton County Jailer, Terry Carl, learned that Pope's complaint had implicated one of the jail deputies, Carl authorized a "lockout order" against Pope, which forced Pope to leave the jail immediately and barred him from reentering the premises. Sometime after the lockout order went into effect, Pope's employer fired him. Pope sued his employer for unlawful termination, and the parties settled. Pope then initiated this suit against Carl, alleging that Carl violated 42 U.S.C. § 1983, a Kentucky civil-rights statute, and common-law tort protections by retaliating against Pope for complaining about sexual harassment by authorizing the lockout order. The case proceeded to discovery, and

Carl moved for summary judgment on all counts. Carl argued, among other things, that a release agreement Pope had signed upon settling his earlier suit against his employer barred his current claims against Carl. The district court granted summary judgment on this limited ground and declined to consider the parties' arguments on the merits. We now **REVERSE**.

## I. BACKGROUND

Southern Health Partners, Inc. ("SHP"), a medical-services provider, contracted with Kenton County Jail to provide medical, dental, and mental-health services to jail inmates. R. 20-4 (Health Servs. Agreement at 1) (Page ID #83). From September 2012 until September 2015, Russell Pope worked for SHP as a nurse at Kenton County Jail. R. 31 (Pope Dep. at 24–25, 163–65) (Page ID #1867–68, 2006–08). On September 10, 2015, Pope's supervisor, Shawnee Thoman, announced that another nurse, Shawn Simms, would be promoted to a supervisory role. R. 24-2 (Thoman Announcement) (Page ID #928). This upset Pope, who believed that Simms had repeatedly engaged in inappropriate and offensive behavior at work, including by placing a sexually explicit screensaver on the medical unit's computers. R. 28-1 (Email from R. Pope to K. Utz, dated Sept. 16, 2015) (Page ID #1837). On September 16, 2015, Pope emailed Katie Utz, a member of SHP's human-resources department, to express his displeasure with Simms's promotion and to notify the company of Simms's allegedly harassing behavior. *Id.*

The next day, Thoman asked Pope to join a phone call with "corporate" to discuss his allegations. R. 31 (Pope Dep. at 143–48) (Page ID #1986–91). Colonel Mike Jones, the Chief Deputy Jailer, also participated in the call. R. 24-4 (Thoman Dep. at 78–79) (Page ID #1224–25).

It came out, either during the call or afterwards, that SHP had conducted an investigation into Pope's allegations and had learned that a jail deputy, and not Simms, had been responsible for the offensive screensaver. R. 28-1 (Email from K. Utz to R. Pope, dated Sept. 17, 2015) (Page ID #1839). The call ended, and Pope returned to work. R. 24-6 (Jones Dep. at 36) (Page ID #1344).

Contradictory stories have emerged about Pope's behavior following the call. Pope testified that he resumed his work as usual. R. 31 (Pope Dep. at 154) (Page ID #1997). Jones, by contrast, insisted that Pope was disruptive and agitated, which led Jones to ask the Jailer, Terry Carl, to authorize a "Temporary Lockout Order" removing and barring Pope from the jail. R. 24-6 (Jones Dep. at 56–57) (Page ID #1364–65). In any event, Carl quickly approved the lockout order, and Jones told Pope to gather his belongings and escorted Pope from the jail. *Id.* at 57–58 (Page ID #1365–66); R. 31 (Pope Dep. at 156–57) (Page ID #1999–2000). As Pope was being led out, Jones purportedly told him that Carl was upset because Pope had "involved [Carl's] deputies in an investigation." R. 31 (Pope Dep. at 159) (Page ID #2002). The temporary lockout order later became a permanent lockout order, *id.* at 95 (Page ID #646), and SHP terminated Pope's employment.

In December 2015, Pope sued SHP in Kenton Circuit Court for age discrimination, sex discrimination, and retaliation on the basis of his sexual harassment complaint. R. 24-2 (Compl. ¶¶ 21–35) (Page ID #916–18). The complaint also named Utz and Thoman as defendants and alleged that they had conspired to interfere with Pope's rights under Kentucky's civil-rights statute and had retaliated against Pope for complaining about sexual harassment. *Id.* ¶ 37 (Page ID #918).

Pope claimed that as a result of his "denial of promotion and termination of employment," he "suffered lost wages and benefits, lost future earnings" and "sustained severe emotional distress." *Id.* ¶ 20 (Page ID #916).

The parties settled Pope's lawsuit in August 2016 and entered into a "Settlement, Confidentiality and Release Agreement" ("Release Agreement"). R. 21-6 (Settlement Agreement at 1) (Page ID #735). As part of the agreement, Pope agreed to "release[] and discharge[] Defendants, including their . . . affiliated companies . . . , and any other person or entity charged or chargeable with its responsibility or liability (the 'Released Parties')." *Id.* ¶ 3 (Page ID #736). The Release Agreement further stated that it

> shall inure to the benefit of the parties released herein and their agents, servants, employees, representatives, insurers, sureties, past, present and future officers, directors, stockholders, attorneys, subsidiaries, affiliates, partners, insurers, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated.

*Id.* at ¶ 13 (Page ID #739–40).

Shortly after settling his suit against SHP, Pope initiated the present action in federal court against Carl, the Jailer at Kenton County Jail, in his personal capacity. In this suit, Pope claims that Carl violated 42 U.S.C. § 1983 and Kentucky Revised Statutes § 344.280 when he retaliated against Pope for complaining about sexual harassment by locking him out of the jail (Counts One and Two). R. 1 (Compl. ¶¶ 24–34) (Page ID #5–6). Pope further alleges that Carl tortiously interfered with Pope's business relationship with SHP by entering temporary and permanent lockout orders (Count Three). *Id.* ¶¶ 35–44 (Page ID #7). As a result of Carl's conduct, Pope

alleges that he "sustained lost wages and benefits, lost future earnings, embarrassment and . . . severe emotional distress." *Id.* ¶ 23 (Page ID #5). Pope therefore seeks compensatory and punitive damages. *Id.* ¶ 47 (Page ID #8).

Following discovery, Carl moved for summary judgment, arguing, among other things, that Pope waived his current claims against Carl when Pope signed the Release Agreement with SHP because Carl was a "Released Party" under the agreement. R. 20-1 (Mem. in Support of Mot. for Sum. J. at 2) (Page ID #59). The district court granted summary judgment to Carl on this ground, holding that Carl was an "affiliate" under the terms of the Release Agreement. R. 36 (Mem. Op. & Order at 1) (Page ID #2076). Pope now appeals the district court's judgment.

## II. DISCUSSION

### A. Standard of Review

We review de novo the district court's grant of summary judgment. *Pedicini v. Life Ins. Co. of Ala.*, 682 F.3d 522, 526 (6th Cir. 2012). "As a federal court sitting in diversity, we apply the choice-of-law provisions of the forum state." *Id.* (quoting *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004)). Kentucky courts typically apply "the law of the state with the most significant contacts with the parties and the transaction" in contract disputes. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 887 (Ky. 2013). Here, the parties agree that we must turn to Kentucky law to interpret the Release Agreement.

"As with contracts generally, the courts must look to the language of the release to determine the parties' intentions." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky.

2006), *as modified on denial of reh'g* (Mar. 22, 2007). When a contract is unambiguous, courts must "look only as far as the four co[rn]ers of the document to determine [the parties'] intent." *Id.* "[T]he interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Id.* (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).

## B. Scope of the Release Agreement

The district court erred in granting summary judgment in Carl's favor because the Release Agreement does not govern Pope's claims against Carl. Paragraph 3 of the Release Agreement precludes claims against "Released Parties," which are defined in relevant part as "Defendants, including their . . . affiliated companies . . . , and any other person or entity charged or chargeable with [SHP's] responsibility or liability."[1] R. 21-6 (Release Agreement ¶ 3) (Page ID #736). To start, Carl is not an "affiliated company" under the agreement. Obviously he is not a company. Nor is he an "affiliate." Under Kentucky law, "where words having a definite legal meaning are knowingly used in a writing the parties will be presumed to have intended such words to have their proper legal meaning in the absence of any contrary intention appearing in the instrument." *Sparks*

---

[1]Technically, the contract releases "Defendants, including their . . . affiliated companies . . . , and any other person or entity charged or chargeable with **its** responsibility or liability." R. 21-6 (Release Agreement ¶ 3) (Page ID #736) (emphasis added). The term "its" in the final clause has no natural antecedent, rendering the phrase nonsensical as written. Nevertheless, both Carl and Pope read "its" to refer to SHP, and we agree that this interpretation reflects the parties' "manifest intent." *See Lyndon Prop. Ins. Co. v. Houston Barnes, Inc.*, No. 3:04 CV 174, 2005 WL 1840254, at *4 (E.D. Tenn. July 26, 2005) ("[A] general rule of contract construction holds that a mere mathematical, typographical or clerical error will not defeat the manifest intent of the parties if the intent can otherwise be gleaned from the four corners of the contract."). We therefore find that "its" refers to SHP. *Cf. Polis v. Unknown Heirs of Jessie C. Blair*, 487 S.W.3d 901, 905, 908 (Ky. Ct. App. 2016) (holding the trial court did not err in ignoring "typographical differences" in deeds and instead construed the deeds based on their "clear intent," as doing so "ma[d]e sense of what could otherwise be seen as nonsensical").

*Milling Co. v. Powell*, 143 S.W.2d 75, 77 (Ky. 1940); *see also Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 785 (Ky. 2017), *reh'g denied* (Mar. 22, 2018) (holding contract provision unambiguous where it employs a "legal term of art with a clear meaning"). The word "affiliate" is known in law to mean "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary (10th ed. 2014). There is no indication that some other meaning was intended here.

Nor is Carl a person "charged or chargeable with [SHP's] responsibility or liability." R. 21-6 (Settlement Agreement ¶ 3) (Page ID #736). Pope is charging Carl with Carl's *own* alleged misconduct and mistreatment of Pope, not with SHP's allegedly unlawful behavior. As much is clear from the simple fact that the claims Pope now brings against Carl could never have been brought against SHP. For instance, Pope is suing Carl for retaliating against Pope's exercise of his First Amendment rights, in violation of 42 U.S.C. § 1983. *See* R. 1 (Compl. ¶ 28) (Page ID #4). Pope could not have levied such constitutional allegations against SHP, for the "First and Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). "[A] private entity acting on its own cannot deprive a citizen of First Amendment rights." *Id.* Pope's tortious interference claim is similarly untenable vis-à-vis SHP. In this claim, Pope seeks to hold Carl responsible for his role in "inducing or otherwise causing [a] third person"—i.e., SHP—"not to perform [its] contract" with Pope. *Uppal v. Gateway Reg'l Health Sys., Inc.*, No. 2004-CA-000393-MR, 2005 WL 2323174, at *4 (Ky. Ct. App. Sept. 23, 2005) (quoting Restatement

(Second) of Torts § 766 (1979)). Under Kentucky law, such conduct renders Carl liable "for the pecuniary loss resulting to the [plaintiff] from the failure of [SHP] to perform the contract." *Id.* (quoting Restatement (Second) of Torts § 766 (1979)). By definition, then, Pope's tortious-interference claim concerns Carl's "responsibility or liability"—not SHP's. In short, SHP's alleged misconduct—terminating Pope's employment in violation of various Kentucky statutory civil rights provisions—and Carl's alleged misconduct—locking Pope out of the jail because Pope implicated jail deputies in an investigation—are distinct wrongful acts, attributable to distinct actors, and violative of distinct legal protections. Carl is therefore not "charged or chargeable with [SHP's] responsibility or liability" with respect to Pope, and is thus not a "Released Part[y]" under the Release Agreement. *See* R. 21-6 (Release Agreement at 2) (Page ID #736).

Carl nevertheless argues that he is covered by the Release Agreement because paragraph 13 provides that the agreement

> **inure[s] to the benefit of the parties released herein** and their agents, servants, employees, representatives, insurers, sureties, past, present and future officers, directors, stockholders, attorneys, subsidiaries, affiliates, partners, insurers, predecessors and successors in interest, and assigns **and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated**.

R. 21-6 (Release Agreement ¶ 13) (Page ID #739–40). Frankly, we are unsure what it means for the Release Agreement to "inure to the benefit" of persons "affiliated" with the released parties. Carl seems to believe that the Release Agreement inures to his benefit by releasing him from liability. But the Release Agreement specifically identifies the "Released Parties"—i.e., the parties who are "forever release[d] and discharge[d]" from liability "arising out of" or "pertaining to[] the

claims and matters alleged" in Pope's suit against SHP. *Id.* at 2 (Page ID #736). It is hard to understand why the drafters would limit the class of "Released Parties" in one provision and then expand it in another. "Because a contract 'should be read to give effect to all its provisions and to render them consistent with each other,'" *Gallo v. Moen Inc.*, 813 F.3d 265, 270 (6th Cir. 2016) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)), the Release Agreement almost certainly "inure[s] to the benefit" of persons "affiliated" with "Released Parties" in some way *other* than releasing them from liability. Ultimately, however, we need not resolve this ambiguity (nor ask the district court to do so), because Carl is no more an "affiliate" of SHP for the purposes of paragraph 13 than he is an "affiliated company" under paragraph 3.

According to Carl, he is "affiliated" with SHP because (1) "it is Jailer Carl's responsibility to provide medical services to inmates, and he does so contractually through SHP," Appellee Br. at 8; (2) "SHP and its staff are subject to the security controls of Jailer Carl," *id.*; and (3) the Health Services Agreement between Kenton County Jail and SHP includes cross-indemnification provisions, *id.* at 8–9. We reject each position in turn.

First, SHP does not contract with Carl to provide medical services with the Kenton County Jail; SHP contracts with Kenton County. R. 20-2 (Health Servs. Agreement at 1) (Page ID #83). And even if SHP did contract with Carl, identifying any party with whom SHP contracts as an "affiliate" would render superfluous almost every other entity in paragraph 13 of the Release Agreement. After all, SHP also contracts with its "agents, servants, employees, representatives, insurers, sureties," et cetera. *See* R. 21-6 (Release Agreement ¶ 13) (Page ID #739–40). Kentucky

courts generally will not "accept" contractual interpretations that render some provisions "mere surplusage and superfluous," *see Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 9 (Ky. Ct. App. 2009), and neither shall we.

Second, SHP is not subject to Carl's "control" as that term is used within the context of affiliated parties. As noted above, Black's Law Dictionary defines "affiliate" to mean "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary (10th ed. 2014). Such control is vastly different than the control Carl contends he harbors over SHP and its staff—namely, the ability to control SHP's access to the Jail. *See* Appellee Br. at 7. This is essentially the same "control" dentists wield over patients' access to their offices and store owners wield over patrons' access to their stores. Carl offers no support for his claim that the type of control he exerts over Kenton County Jail's premises is relevant for defining "affiliated," as that term is typically used in liability-release agreements. There is therefore no reason to think that Carl's tortured construction "comport[s] with the reasonable intent of the parties in making the contract." *Senn's Adm'x v. Mich. Mut. Liab. Co.*, 267 S.W.2d 526, 527 (Ky. 1954) (quoting *Gen. Accident, Fire & Life Assur. Corp. v. Louisville Home Tel. Co.*, 193 S.W. 1031, 1033 (Ky. 1917)).

Finally, the cross-indemnification provisions in the Health Services Agreement render SHP and Carl less "interdependen[t]" than Carl claims. *See* Appellee Br. at 8. Carl insists that § 8.2 "provide[s] that SHP may be joined as a party defendant in a lawsuit against Jailer Carl," and § 8.3 "make[s] Jailer Carl chargeable for SHP liability arising from his operational obligations and,

conversely, SHP chargeable for Jailer Carl's liability arising from SHP's contractual obligations." Appellee Br. at 8. This is not quite right. Section 8.2 allows SHP to be joined as a party defendant only if a suit brought against Carl "contain[s] any allegations concerning SHP's medical care of inmates and the performance of SHP's employees, agents, subcontractors or assignees," which Pope's suit does not. *See* R. 20-2 (Health Servs. Agreement at 12) (Page ID #94). And § 8.3's cross-indemnification provisions expressly exclude the sorts of allegations at issue in this case: "In no event shall this agreement to indemnify be construed to require SHP to indemnify the Jailer . . . from the Jailer's, the County's, its agents' and/or employees' own negligence and/or their own actions or inactions," and "[i]n no event shall this agreement to indemnify be construed to require the County to indemnify SHP, its agents and/or employees from SHP's, its agents' and/or employees' own negligence and/or their own actions or inactions." *Id.* As Pope's suit against Carl concerns Carl's "own actions or inactions," the cross-indemnification provisions in § 8.3 are wholly irrelevant. *See id.* Moreover, Carl has once again failed to provide a single case citation to support his broad theory of affiliation. As we are also unaware of any Kentucky or Sixth Circuit cases holding that one entity is "affiliated" with the employee of another entity based on cross-indemnification and joinder agreements between the two entities, we decline to endorse Carl's unusual interpretation of that term.

### III. CONCLUSION

The district court erred in granting summary judgment to Carl on the ground that Pope waived his claims against Carl by signing the Release Agreement with SHP. Because the district

court did not address the parties' other arguments in favor of and against summary judgment, we leave it to the district court to resolve those issues in the first instance.  *See Stanek v. Greco*, 323 F.3d 476, 480 (6th Cir. 2003).  We therefore **REVERSE** and **REMAND** for further proceedings consistent with this opinion.